UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MARTIN SCHACKNER,

                          E.D. Bankr. Adv. Proc.
           Appellant,        No. 809-08096(DTE)

    -against-

                          MEMORANDUM & ORDER
BRESLIN REALTY DEVELOPMENT CORP.,     11-CV-2734(JS)

                 Appellee.
------------------------------------X
APPEARANCES
For Appellant:      Katherine A. Geraci, Esq.    *JAN 05 2012*
                  Richard G. Gertler, Esq.
                  Thaler & Gertler, LLP
                  90 Merrick Avenue, Suite 400
                  East Meadow, NY 11554

For Appellee:       Michael D. Brofman, Esq.
                  Weiss & Zarett, P.C.
                  3333 New Hyde Park Road, Suite 211
                  New Hyde Park, NY 11042

For Chapter 7      Steven B. Sheinwald, Esq.
Trustee:           Kirschenbaum & Kirschenbaum, P.C.
                  200 Garden City Plaza
                  Garden City, NY 11530

SEYBERT, District Judge:

      Pending before the Court is an appeal arising out of a Chapter 7 bankruptcy action filed in the United States Bankruptcy Court for the Eastern District of New York against Debtor Martin Schackner (the "Debtor"). Appellee Breslin Realty Development Corporation ("BRDC") filed an adversary proceeding against Debtor seeking a denial of discharge under 11 U.S.C. § 727(a)(2)(A) and (a)(3) and moved for summary judgment. The Debtor now appeals the order of Bankruptcy Judge Dorothy T.

Eisenberg granting summary judgment to BRDC and denying the Debtor's discharge under 11 U.S.C. § 727(a)(3). For the following reasons, the order of the Bankruptcy Court is AFFIRMED and the Debtor's appeal is DENIED.

<u>BACKGROUND</u>[1]

The Debtor is a licensed Certified Public Accountant ("CPA") and real estate broker. He obtained a bachelor's degree in Accounting and Information Systems from Queens College, The City University of New York in 1979, and he obtained a Masters in Business Administration ("MBA") from St. John's University in or about 1983. In 1988, BRDC hired the Debtor to fill its Controller position, and in or about 1994, BRDC promoted him to Chief Financial Officer. The Debtor remained in that position until 2004 when his employment with BRDC was terminated. That same year, BRDC commenced a lawsuit against the Debtor, which was settled in 2008 for $625,000. The Debtor retained Siller Wilk, LLP to represent him in that suit.

In 2005, the Debtor began working with Smith & Drake Realty Corp. d/b/a Smith & DeGroat Real Estate ("Smith & DeGroat) as an associate real estate broker. Around the same time or shortly thereafter, the Debtor incorporated a Subchapter

---

[1] The following facts are drawn from the parties' Local Bankruptcy Rule 7056-1 statements of undisputed material facts and their evidence in support. Any relevant factual disputes are noted.

S corporation under the name Landmark Real Estate Services ("Landmark") and directed Smith & DeGroat to deposit his commissions directly into Landmark's bank account.[2]  The Debtor would then periodically transfer funds from Landmark's bank account to an account maintained by his wife Karen Schackner (also known as Karen Klafter).  The Debtor asserts that his and his wife's household expenses were all paid from Mrs. Schackner's account.

On July 14, 2008, Siller Wilk filed an involuntary Chapter 7 petition against the Debtor on the basis of unpaid legal fees.  An order for relief was entered on consent of the Debtor on September 26, 2008, and a Chapter 7 Trustee (the "Trustee") was appointed.  Rule 2004 examinations were taken of the Debtor and Mrs. Schackner.  In connection with the Rule 2004 examinations, in January and February 2009, the Debtor produced the following financial records:[3]

- Martin and Karen Schackner's federal income tax returns for 2006 and 2007 and amended tax returns for 2004-2007;

- Debtor's bank statements from Capital One / North Fork Bank from November 2005 to April 2008;

---

[2] The parties dispute whether the employment agreement with Smith & DeGroat was with the Debtor individually or with the Debtor through Landmark.

[3] There were additional documents requested during Mr. Schackner's Rule 2004 examination, for example any records that may have been delivered to his accountant; however, no records were produced in response to these requests.

- Debtor's bank statements from WaMu from January 2008 to October 2008;

- Debtor's credit card statements for multiple credit cards for dates ranging from November 2007 through August 2008;

- the Deed and mortgage statements for the Schackner residence;

- Blue Hill Associates' tax returns for 2006 and 2007;

- MS Realty Services' tax returns for 2006 and 2007 and bank statements from September 2008 to January 2009;

- Landmark's tax return for 2006;

- 2007 K-1 form issued by Landmark to the Debtor;

- Landmark's Capital One / North Fork bank statements from November 2006 to July 2008;

- Landmark's Bank of America bank statements from April 2008 to January 2009;[4]

- Landmark's Bank of America credit card statements for December 2007 and February 2008 to July 2008; and

- miscellaneous bills for insurance premiums, telephone, electricity, landscaping, college tuition, security alarms, and car loans;[5]

---

[4] BRDC asserts that the Debtor did not produce Landmark's Bank of America bank statement for July 2008.  In response, the Debtor produced a cover letter from his attorney, dated January 6, 2009, stating that the July 2008 bank statement was enclosed. The Debtor, however, did not attach the actual Bates-stamped statement to any of his filings in the adversarial proceeding.

[5] It is unclear to whom many of these bills were addressed and when they were dated because the Debtor provided the Bankruptcy Court with a list of the documents produced in the form of a Supplemental Affidavit in Further Opposition to Plaintiff's Motion for Partial Summary Judgment ("Supplemental Affidavit"), not with the actual documents.

BRDC also obtained copies of the Debtor's commission invoices from Smith & DeGroat.

The Debtor asserts that he maintained all of his business records relating to Landmark on his personal computer using Quicken software; however, his computer crashed in late 2007 or early 2008. He did not maintain any hard copies of his financial records, and he did not back-up his electronic records. Therefore, when his computer crashed, he lost all of his records relating to the period before 2008. Since his hard drive was replaced in early 2008, the Debtor has been backing-up his records twice daily. Notably, however, the Debtor did <u>not</u> subsequently produce Landmark's tax returns for 2007 or 2008, his own tax returns for 2008, or any Quicken records for 2008.

Thereafter, BRDC and the Trustee separately commenced adversary proceedings seeking to bar the Debtor's discharge, which were consolidated by the Bankruptcy Court on November 24, 2009. In December 2009, BRDC served a Request for the Production of Documents ("Request") on the Debtor. The Request included <u>inter alia</u>: all documents reflecting commissions earned from Smith & DeGroat from 2006 through and including July 14, 2008; copies of all documents reflecting outstanding amounts due for services rendered pre-petition; copies of all documents relating to any post-petition payments; copies of the Debtor's

5

2008 federal and state tax returns; and copies of the 2008 federal and state tax returns for any corporate entity which is owned and/or controlled by the Debtor. The Debtor did not produce any documents in response to the Request.

On November 4, 2010, BRDC moved for summary judgment on its Fifth and Sixth causes of action for denial of discharge under 11 U.S.C. § 727(a)(3) and (a)(2)(A). The Bankruptcy Court granted BRDC's motion solely on the basis of § 727(a)(3), holding that denial of discharge was warranted because the Debtor failed, without reasonable justification, to preserve and produce records from which the Debtor's financial condition could be ascertained. Breslin Realty Dev. Corp. v. Schackner (In re Schackner), No. 08-09-08096-478, 2011 WL 1331979 (Bankr. E.D.N.Y. Apr. 7, 2011). The Debtor appealed.

<u>DISCUSSION</u>

In granting summary judgment and denying discharge under § 727(a)(3), the Bankruptcy Court "deem[ed] it unnecessary to make a determination with respect to [BRDC's] Sixth Cause of Action under 11 U.S.C. § 727(a)(2)(A)," id. at *8; thus, the sole issue on appeal is the appropriateness of the grant of summary judgment under § 727(a)(3).

I.   Standard of Review

   A.   Standard on Bankruptcy Appeal

   Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. FED. R. BANKR. P. 8013. The Bankruptcy Court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Id.; see also Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994). The Bankruptcy Court's legal conclusions, however, are reviewed de novo. See Momentum Mfg. Co., 25 F.3d at 1136.

   "Where the appellant challenges a grant of summary judgment, the appellate court reviews the lower court's ruling de novo because the determination that there are no genuine issues of material fact is a legal conclusion." Jacobowitz v. Cadle Co. (In re Jacobowitz), 309 B.R. 429, 435 (S.D.N.Y. 2004) (citing FDIC v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994)); see also Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.), 309 B.R. 830, 835 (S.D.N.Y. 2003) ("[O]n an appeal specifically from a bankruptcy court's summary judgment order, the standard of review is de novo . . . ."). Thus, the Court reviews the Bankruptcy Court's grant of summary judgment de novo.

7

B.   Summary Judgment Standard

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41

(2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

Although courts are often not inclined to grant summary judgment on objections to discharge, "summary judgment is not per se improper in a § 727 proceeding." Wazeter v. Mich. Nat'l Bank (In re Wazeter), 209 B.R. 222, 227 (W.D. Mich. 1997); see also State Bank of India, N.Y. Branch v. Sethi (In re Sethi), 250 B.R. 831, 840 (Bankr. E.D.N.Y. 2000) (denying discharge on summary judgment even though "[w]hen denial of discharge is sought on motion for summary judgment, courts exercise even greater caution").

II. Denial of Discharge Under § 727(a)(3)

"The relief of discharge is the cornerstone of the debtor's 'fresh start' in bankruptcy. It enables the debtor to begin his post-bankruptcy life with a clean slate vis-à-vis his creditors." Helms v. Gangemi (In re Gangemi), 291 B.R. 242, 246 (E.D.N.Y. 2003) (quoting Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella), 133 B.R. 694, 697 (Bankr. E.D.N.Y. 1991)). This relief however is a privilege, not a right, and only the "honest but unfortunate debtor" is entitled to it. Walters v. Sawyer (In re Sawyer), 130 B.R. 384, 392 (Bankr. E.D.N.Y. 1991) (quoting Grogan v. Grogan, 498 U.S. 279, 287, 111 S. Ct. 654,

9

112 L. Ed. 2d 755 (1991)). Thus § 727(a) of the Bankruptcy Code provides various grounds for denying the discharge of a dishonest or otherwise unworthy debtor, which must be construed liberally in favor of the debtor. See Gangemi, 290 B.R. at 246; Krohn v. Frommann (In re Frommann), 153 B.R. 113, 116 (Bankr. E.D.N.Y. 1993)

Section 727(a)(3) exempts from discharge any debtor who has:

> concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances in the case[.]

"The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." Sethi, 250 B.R. at 837-38. "If a debtor fails to produce records, sufficient to meet the burden placed upon him by § 727(a)(3), the Court must deny the discharge." Gangemi, 291 B.R. at 246.

In determining whether discharge should be denied pursuant to § 727(a)(3), the Court must engage in a two-step analysis. First, the Court must determine whether the Debtor's

10

records present a complete and accurate picture of the Debtor's
financial condition and business transactions.  See Jacobowitz,
309 B.R. at 436 ("[T]he objecting party [must] demonstrate[]
that the debtor's failure to keep records has made it impossible
to ascertain the debtor's financial condition and material
business transactions . . . ."); Gangemi, 291 B.R. at 246
(same).  The burden of proving the adequacy of the debtor's
records rests with the party objecting to discharge.  See In re
Martin, 554 F.2d 55, 58 (2d Cir. 1977); see also Sethi, 250 B.R.
at 838.  Second, the Court must determine if the debtor's
failure to maintain and produce adequate records is justified.
See Jacobowitz, 309 B.R. at 436.   The burden shifts to the
debtor to justify the absence of comprehensive records.  See
Pimpinella, 133 B.R. at 698.

    A.   Inadequacy of Debtor's Records

      A party objecting to discharge under § 727(a)(3) must
show, by a preponderance of the evidence, that: (1) the debtor
failed to keep or preserve adequate records; and (2) "'that such
failure makes it impossible to ascertain the debtor's financial
condition and material business transactions.'" Jacobowitz, 309
B.R. at 436 (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1230
(3d Cir. 1992)).  Here, it is undisputed that the Debtor failed
to maintain adequate records as he admits that all of Landmark's
business records pre-dating 2008 were lost when his hard drive

crashed in late 2007 or early 2008.  Thus, the issue before this Court on appeal is whether, as a matter of law, it is impossible to ascertain the Debtor's financial condition based on the records that were produced.

The Bankruptcy Court held that the Debtor's records were insufficient.  The Court agrees.  Courts in the Second Circuit have consistently denied discharge on summary judgment when certain categories of documents essential to determining a debtor's history are missing--specifically, tax returns and their underlying financial records.  See, e.g., Nisselson v. Wolfson (In re Wolfson), 152 B.R. 830, 833 (S.D.N.Y. 1993) ("Income tax returns are quintessential documents 'from which the debtor's financial condition or business transactions might be ascertained,' in the words of subsection (3)." (quoting 11 U.S.C. § 727(a)(3))); Jacobowitz, 309 B.R. at 437 (finding tax returns inadequate as a matter of law when no supporting records were produced); Sethi, 250 B.R. at 840 ("[I]t is impossible to determine whether the tax returns that the debtor produced are accurate, because none of the underlying financial records were produced."); see also Wazeter, 209 B.R. at 229 ("[V]arious cases have suggested that certain categories of information may be essential to determining a debtor's history." (collecting cases)).  Here, it is undisputed that the Debtor failed to produce his and his wife's personal tax returns for 2008 and

12

Landmark's tax returns for 2007 or 2008.  In addition, although the Debtor did produce some supporting documentation, specifically bank statements, and credit card and other bills, it is undisputed that the Debtor did not produce any evidence of his or Landmark's expenses prior to November 2007.  Thus, although BRDC had copies of the Debtor's and Landmark's tax returns for 2006, there are no bills or invoices to confirm the accuracy of any deductions or other reported expenses. Similarly, while some bills and invoices were produced for 2008, the Debtor did not provide copies of his, his wife's, or Landmark's tax returns.  Such incomplete records are insufficient as a matter of law to enable BRDC, the Trustee, or the Court to determine the Debtor's financial condition and recent business transactions.

Additionally, summary judgment is appropriate when "a plaintiff raises the inference that a debtor has failed to maintain appropriate records[] by asserting that the debtor has failed to produce records in the course of discovery, and the debtor fails to rebut this presumption with the production of documents." Gangemi, 291 B.R. at 246-47 (collecting cases). Here, in addition to the records that were allegedly lost when the Debtor's hard drive crashed, the Debtor also failed to produce the following documents that were specifically requested of him: his 2008 tax returns, Landmark's 2007 and 2008 tax

returns, any documents that were turned over to the Debtor's accountant to aid in the preparation of his tax returns, any documents reflecting any real estate commissions that were earned pre-petition but were not paid until post-petition or were not yet paid and still due. The Debtor does not contest this. Rather, he repeatedly argues that he produced "voluminous" records in response to the demands by BRDC and the Trustee.[6] But "it is not quantity, but quality, that is relevant to the § 727(a)(3) inquiry." Miller v. Pulos (In re Pulos), 168 B.R. 682, 691 (Bankr. D. Minn. 1994). The Debtor "cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the [D]ebtor's assets." Frommann, 153 B.R. at 118 (citing Hughes v. Lieberman (In re Hughes), 873 F.2d 262, 264 (11th Cir. 1989)).

Accordingly, the Court finds that BRDC has demonstrated that no genuine issue of material fact exists with respect to the adequacy of the Debtor's records or its ability

---

[6] The Court notes that while the Debtor did produce over 900 pages of Bates-stamped records, more than ninety pages appear to be duplicates. For example, the Debtor's Supplemental Affidavit which lists all of the documents produced and their corresponding Bates numbers states that Landmark's Bank of America checking account statements for April 2008 to January 2009 were produced at Bates numbers 761 to 794, and the same statements for April 2008 to June 2008 were reproduced at Bates numbers 447 to 460.

to ascertain the Debtor's financial condition and business transactions from the proffered records.

B.    Debtor's Justification

"Even where an objecting party makes out a prima facie case for discharge under § 727(a)(3), discharge should still be granted if the [D]ebtor establishes that his failure to keep records was justified." Jacobowitz, 309 B.R. at 438. Here, the Debtor argues that the deficiency in his records is justified because the hard drive on his computer, which maintained Landmark's electronic records, crashed and had to be replaced in early 2008. However, this does not explain the Debtor's failure to produce records relating to the period after his computer crashed--including any financial data as recorded in the Debtor's Quicken program, the Debtor's and Landmark's tax returns for 2008, and any information regarding pre-petition earnings that may have been received or due post-petition. "[T]he Debtor's inexplicable failure to produce the[se] documents . . . leads the Court to believe that the Debtor's failure to preserve the requisite documents is either an attempt to conceal evidence as to his assets and liabilities or reflects gross negligence so as to warrant barring the Debtor's discharge." Thaler v. Erdheim (In re Erdheim), 197 B.R. 23, 29-30 (Bankr. E.D.N.Y. 1996) (granting summary judgment in favor of Trustee and barring Debtor's discharge under § 727(a)(3).

15

Since the Debtor has offered no explanation for his failure to produce these documents, he has wholly failed to meet his burden to withstand summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, the order of the Bankruptcy Court is AFFIRMED and the Debtor's appeal is DENIED.  The Clerk of the Court is directed to mark this appeal closed.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    January __5__, 2012
          Central Islip, New York

16